**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

**Criminal Action No. 06-cr-00431-MSK**

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.

**2.  JOSE ALFREDO SANCHEZ-GUSMAN,**

    Defendant.

---

**OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**

---

**THIS MATTER** comes before the Court pursuant to Mr. Sanchez-Gusman's *pro se* Emergency Motion for Compassionate Release **(# 1061)** and the Government's response **(# 1068)**.[1]  Given Mr. Sanchez-Gusman's *pro se* status, the Court construes his motion liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

In 2006, Mr. Sanchez-Gusman, along with several others, were charged in a large-scale drug distribution conspiracy.  Mr. Sanchez-Gusman pled guilty, and in 2009, was sentenced to 228 months of imprisonment, although that sentence was later reduced to 223 months to do retroactive changes to the Sentencing Guidelines **(# 992, # 1047)**.

In the instant motion, Mr. Sanchez-Gusman seeks "compassionate release" pursuant to 18 U.S.C. § 3582(c), based on the spread of the COVID-19 virus.  Mr. Sanchez-Gusman notes that he is 52 years old and "concerned about the risks" of the COVID-19 pandemic.  He does not

---

[1]     Also pending are two motions to withdraw **(# 1066, 1067)** by prior Government counsel. Those motions are granted.

1

identify any specific health conditions or other factors that place him within any of the categories of persons identified by the U.S. Centers For Disease Control ("CDC") as being especially susceptible to complications from COVID-19 infection.

Mr. Sanchez-Gusman has served well more than half his sentence, and the Government indicates that his projected release date, assuming continued good behavior, is October 2022. Mr. Sanchez-Gusman anticipates that, if released, he "would be extradited to Mexico where he will reside with his wife and children, he would be supported by his family, [and] would self-quarantine at home as long as necessary" before obtaining "suitable, gainful employment." Neither Mr. Sanchez-Gusman's motion nor the Government's response indicates whether Mr. Sanchez-Gusman has previously made a request of the Warden at his facility for the relief he seeks here.

Turning first to the issue of exhaustion, 18 U.S.C. § 3582(c) prohibits the Court from modifying an inmate's sentence unless the BOP has made a motion on the inmate's behalf or that the inmate has requested the BOP do so and the BOP has actually or constructively declined. *U.S. v. Springer*, ___ Fed.Appx. ___, 2020 WL 3989451 (10th Cir. July 15, 2020). An inmate's failure to do make such a request upon the BOP and have it denied constitutes a failure to exhaust administrative remedies, requiring denial of the motion without prejudice. Mr. Sanchez-Gusman does not allege any facts demonstrating that he satisfies this requirement and for that independent reason, the Court denies his motion.

Assuming the Court could reach the merits of Mr. Sanchez-Gusman's request, the Court may reduce a previously-imposed sentence under 18 U.S.C. § 3582(c) if, among other things, the requested reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Commission Guidelines permit the Court to

2

reduce a term of imprisonment if: (i) "extraordinary and compelling circumstances warrant the reduction" and (ii) the factors set forth in 18 U.S.C. § 3553(a) would otherwise be satisfied by such a reduction. The Guidelines define "extraordinary and compelling circumstances" as existing where, among other alternatives: (i) the defendant is suffering from a terminal illness with an end of life trajectory; (ii) the defendant is suffering from a serious physical or mental condition or age-related deterioration that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility"; or (iii) the defendant is 65 years old or older, suffering from a serious deterioration in physical or mental health due to aging, and has served at least 75% of his term of imprisonment. §1B1.13, *comment* 1(A)-(C).

Mr. Sanchez-Gusman does not meet any of these requirements – he does not have a terminal illness or any particular adverse physical or mental condition that he identifies and he is not over 65 years of age. In light of the pandemic, the Government takes the position that any individual possessing one or more of the risk factors identified by the CDC as increasing the risk of severe complications from COVID-19 falls within the category of being "substantially diminished" in the ability to provide self-care. But Mr. Sanchez-Gusman does not claim to possess any such risk factor. His argument is that he fears that he may contract COVID-19, not that he is facing any imminent risk of exposure or particularized risk to his health if he does so. Because Mr. Sanchez-Gusman has not demonstrated the existence of any extraordinary and compelling circumstances warranting his release, his motion is denied on this ground as well.

Finally, even if Mr. Sanchez-Gusman had made such a showing, the Court would turn to the second part of the analysis: whether Mr. Sanchez-Gusman's release is consistent with the factors set forth in 18 U.S.C. § 3553(a). Those factors include, but are not limited to: (i) the nature and circumstances of the offense and Mr. Sanchez-Gusman's own characteristics; (ii) the

need for the sentence imposed to reflect the seriousness of the offense and to prevent unwarranted sentencing disparities, among other concerns; and (iii) the sentence recommended by the Sentencing Guidelines. 18 U.S.C. § 3553(a)(1), (2), (4).

The Court addressed each § 3553(a) factor during Mr. Sanchez-Gusman's initial sentencing. It noted, among other things: (i) "despite repeated incarceration, repeated probation, and prior deportation," Mr. Sanchez-Gusman "has nevertheless returned to the United States to engage in drug-trafficking" and that "nothing here makes me think that that pattern is going to change"; (ii) that Mr. Sanchez-Gusman suffers from substance addictions and that "in the absence of effective treatment" – in which Mr. Sanchez-Gusman has not "evidence[d] an interest in participating" – a custodial sentence is "simply a hiatus" and that Mr. Sanchez-Gusman is likely to return to that behavior upon his release; and (iii) that Mr. Sanchez-Gusman is likely to be deported upon his release. **(# 992-1)** at 10-12.

None of the 18 U.S.C. § 3553(a) factors that were of particular concern to the Court at the time of Mr. Sanchez-Gusman's sentencing are affected in any way by the new circumstances presented by the COVID-19 pandemic. That is to say, Mr. Sanchez-Gusman's criminal history and the nature of his offense are not altered by the COVID-19 pandemic in any way. At best, only 18 U.S.C. § 3553(a)(2)(D), which requires the Court to consider the "needed medical care or other correctional treatment" that a defendant might require, warrants revisiting in light of the pandemic. But as noted above, Mr. Sanchez-Gusman has not identified any medical conditions he possesses that place him at any greater risk if he contracts COVID-19 while incarcerated than he would face if he were to be released. Although Mr. Sanchez-Gusman is justified in fearing that he might be exposed to, and ultimately contract, COVID-19, that fear is one shared by most Americans, incarcerated or not and Mr. Sanchez-Gusman's release from custody would not

4

ensure that he would not contract COVID-19.  Indeed, if the Court were to order Mr. Sanchez-Gusman's release, he would likely not be returned to Mexico immediately.  Instead, he would be taken into custody of Immigration and Customs Enforcement, and the precise date of his deportation thereafter would be subject to circumstances in the control of that agency.  Thus, Mr. Sanchez-Gusman's compassionate release would initially change only the place where Mr. Sanchez-Gusman is detained, continuing to expose him to the risks of infection that arise in any place of incarceration.  Thereafter, assuming Mr. Sanchez-Gusman was promptly deported, his risk of contracting COVID-19 in the community would depend on the nature and extent of the preventative steps he, his family members, and those persons he comes into contact with would take to avoid spreading the virus.

Indeed, in some ways, an argument could be made that Mr. Sanchez-Gusman's continued incarceration serves to protect him against COVID-19.  The Government has identified the preventative steps that the BOP has taken to address the spread of the virus in its facilities, and while it is clear that those measures have not always been successful at all BOP facilities, the FCI Oakdale II facility where Mr. Sanchez-Gusman is housed appears to be one of the BOP's success stories.  According to the Government, FCI Oakdale II has not reported any positive inmate cases of COVID-19 as of August 29, 2020.[2]  Mr. Sanchez-Gusman's motion makes

---

[2]   There is some inconsistency in the available information.  The BOP's own website's report of real-time COVID-19 cases indicates that FCI Oakdale II has reported 3 active confirmed COVID-19 cases among inmates and 9 cases among staff, along with 6 inmates and 6 staff members reported as having once tested positive but now recovered.  The Government's brief notes that there is an adjacent Prison Camp that "administratively falls under the FCI Oakdale II" umbrella and that "the numbers for the camp show up under Oakdale II FCI" on the BOP's website, but that the Prison Camp operates separately from the FCI institution where Mr. Sanchez-Gusman is housed.  The Government states that the camp has reported "35 positive inmate COVID cases and had one death," although those statistics do not match what is shown on the BOP website.  Ultimately, because Mr. Sanchez-Gusman has not shown facts necessary to reach this point in the analysis, the Court need not attempt to resolve those discrepancies.

5

reference to a large COVID-19 breakout that occurred in or about May 2020, infecting potentially more than 100 inmates, but the BOP's website seems to suggest that this outbreak occurred at FCI Oakdale I (1 current inmate and 12 current staff cases, and 209 inmates recovered with 7 deaths), a facility different from the one where Mr. Sanchez-Gusman resides. Thus, the record reflects that, at present, Mr. Sanchez-Gusman's risk of contracting COVID-19 is low.  Even assuming that Mr. Sanchez-Gusman does eventually contract the virus, he has not shown that the BOP lacks the ability to provide adequate, effective treatment for the disease and any complications he might suffer.  And he has certainly not shown that the treatment that the BOP would provide is less-effective that the treatment that he would have access to on his own if released.  Under these circumstances, the Court cannot conclude that consideration of the "medical care" factor of 18 U.S.C. § 3553(a)(2)(D) in the present circumstances would so materially alter the remainder of the Court's sentencing analysis that the Court would conclude that a reduction of Mr. Sanchez-Gusman's sentence would meet §3553(a)'s requirements.

7

Accordingly, Mr. Sanchez-Gusman's Motion for Compassionate Release **(# 1061)** is **DENIED**. The motions at Docket # 1066 and 1067 are **GRANTED** and the Clerk of the Court shall terminate the status of Ms. Knox and Mr. Barrett as counsel in this case.

Dated this 12th day of September, 2020.

**BY THE COURT:**

_____

Marcia S. Krieger
Senior United States District Judge